505 A.2d 1343

**Alice LAWHORNE, et al.**

v.

**CLINTON LIQUOR FAIR, INC.**

**No. 517, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 18, 1986.

Certiorari Denied June 26, 1986.

2

Russell W. Shipley (Linda C. Carter and Meyers, Billingsley, Shipley, Curry, Rodbell & Rosenbaum, P.A., on brief), Riverdale, for appellants.

William E. Knight (Thomas H. Haller, on brief), Upper Marlboro, for appellee.

Argued before WILNER, WEANT and GARRITY, JJ.

WILNER, Judge.

In 1983, appellee Clinton Liquor Fair, Inc. purchased a liquor store in Clinton, Maryland. Within a year and a half, it built the business to gross annual sales of about $400,000. It then decided that there were too many liquor stores in Clinton and found what it thought would be a more profitable location in the Eastpine Shopping Center in Riverdale, some 20 miles away. There had been a liquor store (Eastpines Liquor Store) in that shopping center for many years, but it had recently moved to a new location two blocks (1,584 feet, to be exact) away. Appellee proposed to take over the premises vacated by that liquor store and so applied to the Prince George's County Board of License Commissioners to transfer its liquor license to the new location.

The board conducted a hearing on January 24, 1985, at which appellants Lawhorne and Pickett, through counsel, appeared and voiced their opposition to the transfer.[1] Counsel informed the board that Pickett was Lawhorne's son, that they were residents of Riverdale, that they lived in "two rather substantial houses" on Riverdale Road "across the street from the relocated Eastpines Liquor Store," and that they owned and operated a development of some 300 rental units adjacent to their homes. They supported the relocation of the Eastpines Store as a new investment in the community and felt "that it certainly serves the community adequately and that there is no need for an additional store."

The next day, the board, by written order, denied the application, giving as reasons:

"1. That the area in which the premises is now located is properly accommodated by this license and

---

1. Neither Lawhorne, who was said to be in her 80's, nor Pickett appeared in person. They were represented by counsel, however, who presented evidence and argued their case.

2. That the area to which the license is sought to be transferred is appropriately accommodated by the licenses already in the area:

| | | |
|---|---|---|
| t/a Eastpines Liquors | Class A, BWL | 1,584 feet |
| t/a Community Liquors | Class A, BWL | 4,752 feet |
| t/a Riverdale Liquors | Class A, BWL | 6,336 feet |

3. That there has been no increase in population in the immediate area to which the transfer is sought. In fact, the population has decreased in recent years. There has been no showing of an increased demand for a licensed premise in that area."

Aggrieved by this decision, appellee filed a timely petition for review with the Circuit Court for Prince George's County, contending that the board's decision was "arbitrary, unreasonable and unsupported by any substantial evidence." Pickett filed an "Answer To Petition For Review And Motion To Dismiss Appeal," in which he asserted that he and Lawhorne were parties before the board and that they

"own property and reside adjacent to the property liquor store of Clinton Liquor Fair, Inc., which said adjacent property lies on the north side of Riverdale Road east of its intersection with the Baltimore Washington Parkway and said parties reside within view of the shopping center in which the liquor store is proposed to be located." [2]

Pickett claimed that there was substantial evidence in support of the board's decision and urged that the appeal be dismissed. In support of his answer and motion, Pickett cited Md.Rule B9, which provides, in relevant part, that:

"A party to the proceeding before the agency, or to whom the agency is required by law to give notice of the action appealed from, who desires to participate in the

---

2. It is not entirely clear from this and from what was said to the board exactly where the Pickett and Lawhorne residences and rental properties were located. It would appear that they were somewhere between the shopping center and the new Eastpines store which, as noted, were just over a quarter mile apart.

appeal as a party, and the agency, when it is entitled by law to be a party to the appeal, shall file with the clerk of the court, within thirty days after the filing of the petition of appeal, or such longer or shorter time as may be fixed by the court, a motion to dismiss the appeal, or an answer admitting or denying a fact alleged in such petition and asserting briefly such defense as the party may see fit, or other appropriate pleading."

Lawhorne did not join in Pickett's answer; nor did she file any kind of pleading of her own. At the hearing before the court (J. Melbourne) on appellee's petition, however, counsel for Pickett claimed to represent Lawhorne as well.

After listening to argument of counsel and recounting the evidence presented to the board, Judge Melbourne concluded that the board's decision was "completely arbitrary and capricious and against the evidence that was before [it]. . . ." The judge seemed to reach that conclusion on at least two grounds. Early in her remarks, she observed that the board had authority to adopt uniform rules governing the question of need and sufficiency of service, that it had failed to do so, and for that reason alone it had no authority to restrict licenses.[3] Later, in discussing the testimony of the witnesses, she declared the expert witness for appellee to be "absolutely correct and her logic goes right along with her findings," but said that she could "almost take judicial notice" that a conclusion of the expert witness for Lawhorne and Pickett was not accurate. It is clear from a reading of Judge Melbourne's remarks that she disagreed with the findings and conclusions reached by the board to

---

3. The court's statement in that regard was as follows:
"I point out, the Liquor Board, although it has authority under Article 2B, Section 42, to adopt rules and regulations and to limit and restrict in accordance with a definite standard, the number of licenses which they will consider sufficient for any neighborhood, they choose not to and still choose not to adopt such rules and regulations, and ther[e]fore, I hold they have no authority in the first place to restrict licenses until they do establish reasonable rules and regulations."

the point of declaring those findings and conclusions to be arbitrary.

Upon that reasoning, the court reversed the order of the board and directed the board to "approve forthwith" appellee's application. Averring that the court's decision was not only wrong but at variance on points of law with other decisions of the Circuit Court for Prince George's County, Lawhorne and Pickett have brought this appeal.

In response, appellee urges that we "affirm" the order of the lower court on the grounds that (1) the decision below was not at variance with any other decision of the Circuit Court on a point of law, (2) Lawhorne and Pickett have no standing to bring this appeal, and (3) the appeal presents questions of fact, which we are precluded from considering.

We shall address these questions in a somewhat different order. In the end, however, we shall conclude that we do have jurisdiction to consider the appeal and that the court below erred.

### (1) *Standing Of Appellants*

Appellee's attack on appellants' standing to pursue this appeal seems to be premised on the notion that only a person entitled under Md.Code Ann. art. 2B, § 175(b)(1) to pursue an appeal to the Circuit Court may bring an appeal to this Court unless, somehow, the person has properly "intervened" in the Circuit Court. It is a faulty premise.

Section 175(b)(1) provides:

"Any licensee or applicant for a license, or any group of not less than ten persons who are residents or real estate owners in the precinct or voting district in which the licensed place of business is located or proposed to be located, may appeal therefrom to the circuit court of the county upon payment of all costs incident to the hearing before the local board or local licensing official."

That section certainly states, and therefore limits, who may initiate an appeal to the Circuit Court. It says nothing, however, about who may join the appeal as an appellee or respondent or who may prosecute a further appeal to this

Court. The question of who may participate as an appellee/respondent is now governed by Md.Rule B9, which, by virtue of Md.Rule B1, applies to appeals from county liquor boards. As noted, Rule B9 permits any party to the agency proceeding to "participate in the appeal as a party" by filing a timely answer or motion to dismiss. A motion or petition to intervene is not necessary.

■■■ There is no doubt that Lawhorne and Pickett were parties before the liquor board; they were therefore entitled to become parties before the Circuit Court. Pickett, by filing a timely answer and motion, became a party to the judicial proceeding. Lawhorne, by failing to file a timely pleading, did *not* become such a party, counsel's assertions to the contrary notwithstanding. As Lawhorne was not a party in the Circuit Court, she has not even a pretense of standing to bring this appeal. *Brashears v. Lindenbaum,* 189 Md. 619, 56 A.2d 844 (1948).

Section 175(f) of art. 2B, which we shall discuss again later in this Opinion, provides that, in any case where a judge decides a point of law at variance with the decision previously rendered by another judge, "an appeal may be taken from the decision rendered to the Court of Special Appeals...." The statute does not say *who* may take the appeal, only that an appeal may be taken.

We commented on this in *Jabine v. Priola,* 45 Md.App. 218, 412 A.2d 1277 (1980), where an applicant applied for a liquor license in connection with a proposed restaurant. There, as here, certain residents of the community protested the application, claiming, among other things, that there was no need in the community for another restaurant serving liquor. Among the protestants were a Mrs. Stevens, who appeared before the board but did not testify, and a Mr. Jabine, who did testify. Jabine told the board that his property "directly backs up against this proposed restaurant" and he expressed concern that it would be "a

great detriment" to his property.[4]  He offered no evidence, or further explanation, in support of that concern.

The liquor board denied the application and the applicant appealed to the Circuit Court.  Although Jabine and Stevens could have become parties to the judicial proceeding pursuant to Md.Rule B9, they chose instead to participate through "intervention."  They filed a petition to intervene, which the court granted.  When the court ultimately reversed the liquor board and ordered it to grant the liquor license, Jabine and Stevens appealed to us.  The applicant— appellee in this Court—argued that they had no standing to bring the appeal.  Relying primarily on *Brashears v. Lindenbaum, supra,* 189 Md. 619, 56 A.2d 844 and *Kreatchman v. Ramsburg,* 224 Md. 209, 167 A.2d 345 (1961), the appellee asserted that intervention in the Circuit Court, alone, was not controlling as to the right of appeal— that some special interest in the matter at issue had to be shown.

In the text of our Opinion, and, more importantly, in our holding, we rejected that argument.  At 224–25 of 45 Md. App., 412 A.2d 1277, we observed that, because Jabine and Stevens "were affected property owners," they had a sufficient interest in the proceeding to be accorded permissive intervention under then Md.Rule 208(b) [current Rule 2– 214].  Accordingly, we held that the circuit court did not abuse its discretion in granting their motion to intervene. We then said, at 255, 412 A.2d 1277, "[h]aving correctly acquired the status of parties in the proceedings below, they properly could take any allowable appeal to this Court."  In a footnote (9) to that statement, however, we referred to *Brashears* and *Kreatchman* and said,

> "We recognize that intervention alone is not sufficient to give a litigant standing to appeal from the circuit court; an interest, adversely affected by the court's decision, must also be shown.... *Mr. Jabine and Mrs. Stevens*

---

4.  Some of these facts are not recounted in the *Jabine* Opinion but are taken from the record extract filed in that case.

*have demonstrated that interest by virtue of their status as affected property owners. "* (Emphasis added.)

We then went on, finally as to this point, to hold that: "Logically, all those parties *properly* in the case at the circuit court level, by intervention or otherwise ... may take an appeal to this Court if the circuit court's decision adversely affects them. Therefore, Mr. Jabine and Mrs. Stevens have standing to appeal." *Id.,* [45 Md.App.] at 225, 412 A.2d 1277 (footnote omitted).

Our holding in *Jabine* is precedent for finding standing in this case. Jabine and Stevens were in much the same position as Mr. Pickett is here—property owners who regarded themselves as affected by the proposed new license and who were parties before both the liquor board and the Circuit Court. Our footnote in *Jabine* and the decisions in *Brashears* and *Kreatchman* do require some explanation, however.

*Brashears* was decided in 1948. At that time, there was no rule comparable to Md.Rule B9, freely allowing and providing a method for parties to the administrative proceeding to participate in the judicial proceeding. Participation in the Circuit Court, apparently, had to be by means of permissive intervention which (1) required a showing of special interest in the proceeding and (2) was discretionary with the court. In *Brashears,* the liquor board denied an application and the applicant appealed. None of the protestants before the board even sought to intervene at the Circuit Court level, but, when the court reversed the board, one of them, joined by some neighbors who had not been parties before the board, appealed to the Court of Appeals. That Court dismissed the appeal, holding that "[i]ntervention is a necessary preliminary to an appeal, unless an interest, adversely affected by the decree, is shown on the face of the record." 189 Md. at 628, 56 A.2d 844.[5]

---

5. As we observed in *Jabine,* 45 Md.App. at 225 n. 10, 412 A.2d 1277:

*Kreatchman* was an equity proceeding in which the Ramsburgs, who desired to build a shopping center but were thwarted when their application for rezoning was denied, challenged the validity of the zoning law and sought to restrain the zoning board from enforcing it. Kreatchman, a *proposed* lessee in a *proposed* shopping center a mile and a half away, was permitted to intervene in the equity proceeding in opposition to the Ramsburgs. When the court ruled in the Ramsburgs' favor, Kreatchman appealed.

It was evident from the record that the Ramsburg development would in no way injure Kreatchman's residence. "His only concern," the Court found, "is with the threat of competition from a possible package liquor store in the Ramsburgs' shopping center. It is to protect himself against that possible competition that he seeks the protection of the zoning regulations." 224 Md. at 222, 167 A.2d 345. That kind of tenuous interest, said the Court, was legally insufficient to give him standing in the case: "Apart from the zoning laws, he would have no ground upon which to enjoin the Ramsburgs' use of their land for shopping center purposes; and the zoning laws give him no standing to do so, where the sole basis for invoking them is the prevention of competition." *Id.* Effectively, the Court concluded that Kreatchman should not have been permitted to intervene in the equity proceeding and he would not, therefore, be permitted to prosecute the appeal.

---

"There is dictum in the case of *Brashears v. Lindenbaum, supra,* 189 Md. at 628, 56 A.2d at 849, which can be read to indicate that only the applicant or the requisite group of ten or more property owners may take an appeal to this Court from the circuit court in a liquor license case. However, the Court of Appeals actually dismissed the appeal in *Brashears* because the ten appellants had not intervened in the circuit court and because their interest did not appear on the face of the record. *Id.* at 628–29, 56 A.2d at 849. Moreover, the dictum stemmed from a concession made by the parties themselves and not from a holding of the Court of Appeals. In any event, it is our view that Md.Ann.Code, art. 2B, § 175(f) (1979 Cum.Supp.), and not § 175(b)(1), controls appeals to this Court."

Those cases, and others like them, turned, to a large extent, on the "intervention" rules because that was how the parties positioned themselves, and they have to be read accordingly. Intervention *does* require the showing of a special interest; as stated in *Shenk v. Md. Savings & Loan,* 235 Md. 326, 327, 201 A.2d 498 (1964), "[t]he law in this State is that a person *not a party* will not be permitted to intervene in litigation unless he has an interest which it is essential to protect and which is not otherwise protected." (Emphasis added.)

■ As noted, this is not an "intervention" case. Pickett, a party before the liquor board, became a *party* in the Circuit Court by virtue of and in conformance with Md.Rule B9, and Md.Code Ann.Cts. & Jud.Proc. art., § 12–301 tells us that "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." We are not faced here with a *Kreatchman* situation; Mr. Pickett had no less of an interest in the proceeding than did Mr. Jabine.[6] We therefore reject appellee's "standing" argument as applied to Mr. Pickett.

### (2) *Subject Matter Jurisdiction*

Section 175(f) of art. 2B provides:

"The decision of the [circuit] court ... shall be final and effective at once. No further appeal shall lie nor shall there be any other remedy by which the local board's decision may be reviewed in court, either by way of mandamus, injunction, certiorari or otherwise. However, if any judge of the circuit court of any county shall in any case finally decide a point of law at variance with any decision previously rendered by any other judge of the

---

**6.** We do not suggest that Md.Rule B9 would permit a complete stranger to the proceeding or a person such as Mr. Kreatchman, who has no cognizable interest in the matter, to become a party to the judicial proceeding. Section 175(b)(1) manifests a legislative recognition that persons who reside or own real estate in the voting district have a significant interest in the matter. Those persons at least, if parties before the liquor board, may join the appeal through Rule B9.

State on the same question, an appeal may be taken from the decision rendered to the Court of Special Appeals. Any such appeal shall not stay the action of the lower court. The Court of Special Appeals shall only decide the question of law involved in such an appeal and shall not pass upon any question of fact."

This statute severely limits the right to review in this Court and has been regarded as "jurisdictional" in nature. *See Sullivan v. Bd. of License Comm'rs*, 293 Md. 113, 121, 442 A.2d 558 (1982), speaking of "the jurisdictional prerequisites of § 175(f)." The Court commented on the scope of review allowed under the statute in *Brown v. Baer*, 291 Md. 377, 435 A.2d 96 (1981). At 388, 435 A.2d 96, it held:

"[M]erely because a trial judge, who purports to apply the proper standards of judicial review, may have applied the standards incorrectly in light of the facts of a particular case, does not give rise to a conflicting decision on a question of law so as to authorize an appeal under § 175(f). On the other hand, if a trial judge is actually utilizing legally incorrect standards or criteria for judicial review of liquor board decisions, it could be a decision on a question of law which, if at variance with other trial judges' decisions, would authorize the appeal."

Pickett posits three rulings of law made by Judge Melbourne that he regards as both wrong and in conflict with rulings previously made by other judges of the Circuit Court, namely:

(1) The judge's statement, early in a colloquy with counsel for the board, that "[y]ou have to convince me they [the board] were not arbitrary and capricious and their findings were supported by the evidence." This, he claims, is wrong, in that the burden was not on the board to prove non-arbitrariness but on the applicant to prove the opposite, and is in conflict with rulings by two other judges of the Circuit Court.

(2) The judge applied the wrong standard of review. In commenting upon the evidence before the board, she substi-

tuted her judgment or opinion for that of the board, whereas other judges have correctly concluded that they may not do that.

(3) Judge Melbourne's conclusion that the board's decision was arbitrary because it had failed to adopt rules pursuant to art. 2B, § 42(a) is wrong and in conflict with a ruling by another Circuit Court judge.

■ The record as a whole does not support Pickett's first contention. Although Judge Melbourne did apparently make the remark quoted, it is clear from her later remarks that she recognized the presumption of correctness accorded to agency decisions and did not place the burden of persuasion on the board.

Pickett's second contention is a bit problematic. Some of Judge Melbourne's remarks could well indicate that she was applying her own notions of credibility to some of the evidence, but whether she was in fact doing so is not altogether clear. We need not further address that issue, however, for we think that the third contention has merit and is dispositive.

There can be no doubt that Judge Melbourne's decision rested principally, if not entirely, on her conclusion that the board's decision was arbitrary and capricious because the board had failed to adopt definite standards as to neighborhood need. In addition to the remarks quoted above in n. 3, the judge ended her oral ruling thusly:

"... I conclude that since the Liquor Board has not adopted any rules and regulations to limit and restrict licenses in Prince George's County, and what they consider sufficient in the neighborhood, it is still nebulous, no one can get a guideline, no one can get any type of guideline, it is just completely arbitrary and capricious and against the evidence that was before them and it is clear that it is arbitrary and capricious and based on factors not before them and I therefore reverse, and would order that they approve the transfer forthwith."

The statute referred to by Judge Melbourne in her earlier comments, art. 2B, § 42(a), provides that the county liquor boards

"shall have full power and authority by rules and regulations to limit and restrict, in accordance with a definite standard the number of licenses which they shall consider sufficient for any neighborhood, to regulate and limit the use of mechanical music boxes and other sound-making devices, and to divide the city or county, as the case may be, into districts, and prescribe areas in which no licenses may be issued. Any applicant or licensee feeling aggrieved by any limitation, restriction or prohibition imposed by any such board shall be entitled to appeal as hereinafter provided."

■ This provision has been part of the Maryland law for 53 years; it was included in the first enactment of art. 2B following the repeal of Prohibition. *See* 1933 Md.Laws (Spec.Sess.), ch. 2, § 24. From Judge Melbourne's remarks, it would appear that, in all that time, the county liquor board has proceeded to consider, rule upon, grant, and deny applications without ever adopting either rules limiting the number of licenses in a neighborhood or a "definite standard" for determining the number of licenses "which they shall consider sufficient for any neighborhood." Pickett has referred us to one case, *Wirth v. Simon,* Law No. 29,557 (6/29/66), in which the board denied an application because the area was already adequately served by existing licensees and that action was sustained by Judge Parker, of the Circuit Court, without regard to the lack of rules or a "definite standard" under § 42(a). It is hard to imagine that there have not been many other such cases as well over the years, but, for purposes of this appeal, the *Wirth* case suffices as a predicate for the showing of an inconsistent Circuit Court decision on the same point of law.

Our jurisdiction thus assured, we turn to

### III. *The Merits of the Claim*

Section 42(a), like some other provisions of art. 2B, is an enabling law. It empowers the county liquor boards to set

a definite standard by which to judge neighborhood need, as well as to regulate music boxes and to divide their respective counties into districts. Nowhere does it purport to *require* the boards to do any of those things or to suggest that the boards are precluded from carrying out their functions until they do so. Section 53(a) of art. 2B sets a maximum limit on the number of licenses of each type that may be issued in Prince George's County; § 53(h) makes clear that, because of that limitation, "the burden of proof shall be upon the applicant ... to show to the board ... that the approval of the issuance of a license to said applicant ... is necessary for the accommodation of the public at the premises applied for." No reference is made in § 53 to any "definite standard" or board rules.

■ It is apparent that, for 53 years, the board has seen no need to exercise its authority under § 42(a) to adopt a "definite standard" for judging neighborhood need. It may be that the differences among various neighborhoods make such a standard impractical to fashion, and, with continuous population shifts, impractical to maintain. But practical or impractical, we do not read § 42(a) as requiring the adoption of such a standard. The board must look at each situation that comes before it and, keeping in mind the maximum number of licenses that can be issued throughout the entire county, determine whether the applicant has met the burden thrust on him by § 53(h).

We therefore conclude that Judge Melbourne erred in finding that the board's failure to adopt rules or standards under § 42(a) made its decision in this case arbitrary.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.

WEANT, J., dissents.

WEANT, Judge, dissenting.

Because I believe that appellant Pickett's interest in this matter is not sufficient to give him standing to maintain this appeal, I respectfully dissent.

Application for a liquor license or for a transfer of an existing license triggers a three-tiered statutory process: a hearing before the liquor board, an appeal to the circuit court, and a limited appeal to this Court. Standing at the board level is broad; indeed, "any person shall be heard on either side of the question." Md.Code Ann. art. 2B, § 60(a). Standing to appeal, however, is quite narrow; the statutory scheme reflects "a clear legislative intent to restrict the right of appeal *at every stage.*" *Brashears v. Lindenbaum,* 189 Md. 619, 626, 56 A.2d 844, 848 (1947) (emphasis added).

Md.Code Ann. art. 2B, § 175(b) provides that an appeal to the circuit court may be taken only by (1) the licensee or applicant, or (2) any group of no fewer than ten persons who are residents or real estate owners in the precinct or voting district where the licensed place of business is located or proposed to be located.

As the majority correctly notes, the statute does not indicate who has standing to appeal from the circuit court's decision. This Court, however, has stated that the standing requirements in the circuit court (art. 2B, § 175(b)) do not apply; appeals to this Court are controlled instead by § 175(f). *Jabine v. Priola,* 45 Md.App. 218, 226 n. 10, 412 A.2d 1277, 1282, n. 10 (1980).[1] While § 175(f) is silent as to who may appeal, in *Jabine,* this Court held as follows: "Logically, all those parties *properly* in the case at the circuit court level, by intervention or otherwise, ... may

---

1. As pointed out in the majority, the *Jabine* court stated in a footnote that dictum in *Brashears* might indicate that appeals from the circuit court may be taken only by the license applicant or ten or more property owners. The dictum in *Brashears* was a concession by both parties that such was the case. *Brashears,* 189 Md. at 628, 56 A.2d at 849. In addition, however, the *Brashears* court begins its discussion of standing in the appellate court by stating that "[t]he *applicable statutory provisions* are found in art. 2B sec. 63...." (Emphasis added.) *Id.* at 625, 56 A.2d at 847. That section, which the court goes on to recite, is virtually identical to current Md.Code Ann. art. 2B, § 175(b)(1) governing appeals to the circuit court. This suggests that the Court of Appeals assumed the standing requirements at the appellate court level to be at least as stringent as those in the circuit court.

take an appeal to this Court if the circuit court's decision adversely affects them." *Id.* at 225, 412 A.2d at 1282. (Emphasis in original; footnote omitted.) But, the *Jabine* court further stated, "intervention alone is not sufficient to give a litigant standing to appeal from the circuit court; an interest, adversely affected by the court's decision, must also be shown. *Kreatchman v. Ramsburg*, 224 Md. 209, 217, 167 A.2d 345, 349 (1961); *Brashears v. Lindenbaum*, 189 Md. 619, 628, 56 A.2d 844, 849 (1948)." 45 Md.App. at 225 n. 9, 412 A.2d at 1282 n. 9. *Loughborough v. Rivermass*, 213 Md. 239, 131 A.2d 461 (1957), cited in turn by *Kreatchman*, states the well-settled rule that "a person seeking to redress a public wrong ... must prove special damage from such wrong, differing in character and kind from that suffered by the general public." 213 Md. at 242, 131 A.2d at 463.

The facts of *Jabine*, fleshed out by the majority, show that Mr. Jabine opposed a liquor license for a proposed restaurant which was to directly back up against his property. Mr. Jabine alleged that this would be detrimental to his property interest. The *Jabine* court stated that appellants there "demonstrated [the required] interest by virtue of their status as *affected* property owners." 45 Md.App. at 225 n. 9, 412 A.2d at 1282 n. 9 (emphasis added).

The instant case is readily distinguishable from *Jabine*. While Mr. Jabine complained about a restaurant serving liquor that was to be located directly behind his property, the proposed license transfer here would locate a liquor store two blocks away from Mr. Pickett. Pickett, unlike Jabine, makes no allegation of any threatened property depreciation or harm peculiar to him. His interest in the matter is simply that he is of the opinion that the neighborhood is adequately served by an existing liquor store located across the street from his property.[2]

---

**2.** Counsel summed up appellants' interest as follows:
They [appellants] are primarily interested in preserving the neighborhood as it is and guarding against any deterioriation that would

Yet the majority finds that Jabine and Pickett were in "much the same position" because both were parties before both the liquor board and the circuit court and because both *"regarded themselves* as affected by the proposed new license." To allow litigants to bootstrap the "adversely affected interest" clearly required by the foregoing cases by merely "regarding themselves" as being so aggrieved is to establish an horizon determined only by the jaundice of one's eye.

Whether an appellant has an interest in the subject matter of an appeal sufficient to maintain that appeal is a question to be decided by the appellate court. *Kreatchman v. Ramsburg,* 224 Md. at 217, 167 A.2d at 349. The *Jabine* court did just that; it found Mr. Jabine "to be an *affected* property owner," implicitly because of his obvious close proximity to the proposed restaurant and because of its potentially detrimental affect on his residence.

In *Kreatchman,* the Court of Appeals found that a proposed shopping center, which was to be located over a mile away from Kreatchman, could not threaten to depreciate Kreatchman's property. It is true, as the majority states, that the *Kreatchman* court concluded that Kreatchman's lack of a sufficient interest should have barred him even from intervening in the circuit court, but the court also stated that "it so happens that in the present case the sufficiency of Mr. Kreatchman's interest to sustain his appeal presents substantially the same question as the sufficiency of his interest to warrant intervention." 224 Md. at 215, 167 A.2d at 348 (citations omitted). But, "the fact that intervention has been allowed in the trial court is

---

be occasioned by having too many stores in the area. They feel, Your Honor, as residents of the area, and people that have an interest to protect the area, their ownership in the area, the area is sufficiently accommodated by the existing liquor stores, and they don't want to see another.

Interestingly, counsel also stated on the record that Pickett did not feel particularly aggrieved when another liquor store moved in directly across the street from him. He even supported, by written testimony, a zoning variance to allow that store to erect a free standing sign.

not controlling as to the right of appeal." *Id.* at 216, 167 A.2d at 349 (citing, *inter alia, Brashears* ).

*Kreatchman* is an equity suit, not an appeal from an administrative board decision. 224 Md. at 214–15, 167 A.2d at 348. Intervention in an appeal from an administrative decision requires considerably less interest where the intervenor was a party at the board level. *See Wright v. McCubbin,* 260 Md. 11, 14–15, 271 A.2d 365, 366–67 (1970) (protestants at a zoning board hearing did not file an answer in the circuit court as required by Md.Rule B9, nor did they formally seek to intervene. Nevertheless, the circuit court judge treated them as proper parties. Their appearance itself served as an informal petition for leave to intervene). Even if the level of interest needed to *intervene* is less in an administrative appeal (as in *McCubbin* ), because intervention alone is not controlling as to the right of appeal, the level of interest sufficient for an appeal from the circuit court would presumably remain the same as in *Kreatchman, i.e.,* injury greater than that suffered by the general public.

In *Brashears* the Court of Appeals dismissed the appeal because the protestants had failed to intervene in the circuit court and therefore their interest in the matter was not on the record. There the court held, as the majority quoted, that "[i]ntervention is a necessary preliminary to an appeal, unless an interest, adversely affected by the decree, is shown on the face of the record." 189 Md. at 628, 56 A.2d at 349. Significantly, what the majority omits is the very next sentence *in the text*—"Even where intervention is granted, it is not controlling as to the right of appeal." *Id.* (citation omitted).

The majority distinguishes *Kreatchman* and *Brashears* as "intervention cases." They are different, the majority argues, because intervention *does* require the showing of a special interest. The significant difference, as I understand the majority, is that in an "intervention case" one must show a special interest in order to intervene (and thus

become a party) at the circuit court. But when, as here, one becomes a party merely by way of an answer filed under Md.Rule B9, that special interest will be presumed. In other words, in the majority's view, a litigant with interest enough to join the appeal and become a "party" at the circuit court under Md.Rule B9 (even if that litigant could not have initiated that appeal) may now initiate an appeal to this Court without more.

Instead of "restricting appeals at every stage" as *Brashears* clearly found the legislative intent to be, the majority's rule would open up standing in this Court to any person who originally appeared at the liquor board. As stated at the beginning of this dissent, art. 2B, § 60 allows "any person" to be heard at the board level. That person becomes a "party" merely by identifying himself on the record as having an interest in the outcome of the matter. *Morris v. Howard Research and Development Corp.*, 278 Md. 417, 423, 365 A.2d 34, 37 (1976). The "party" at the board may, by filing an answer under Rule B9, become a party at the circuit court and then, under the majority's rule, initiate an appeal to this Court.

Future appellants with standing would include, states the majority in its note 6, "at least" those who reside or own real estate in the voting district, because of the legislature's recognition in § 175(b)(1) of their "significant interest in the matter." But the legislature did not presume an interest on the part of individual property owners or residents. In § 175(b)(1), it recognized an interest on the part of *ten or more* such persons.[3] Rule B9, however, absolutely requires that anyone who was a party at the board level be given party status in the circuit court. This, notwithstanding the majority's note 6, certainly would include one such as Kreatchman, an area resident.

---

**3.** I would agree that the interest requirement is statutorily presumed on the part of a group of ten or more property owners and such a group would have standing to appeal. *Jabine,* in my opinion, provides standing for a group of *less* than ten only when able to demonstrate a strong interest in the subject matter.

I consider the distinction between the intervenor cases of *Brasheras, Kreatchman,* and *Jabine,* and cases such as that at bar to be insignificant for our purposes. In *Jabine,* this Court said that any proper party before the circuit court, having arrived there by intervention, or otherwise, may appeal from that court's decision *if* that decision adversely affects the party. 45 Md.App. at 225, 412 A.2d at 1282. *Jabine* makes no distinction between intervenors or those having joined the appeal in another way. *Jabine* does, however, restate the holdings of *Kreatchman* and *Brashears*—that intervention without an interest will not control the right to appeal. 45 Md.App. at 225, n. 9, 412 A.2d 1282, n. 9.

If a party wishing to join an appeal in the circuit court by intervention (which in itself, the majority tells us, requires an interest) must show an additional interest in order to maintain an appeal, it would seem that one joining the appeal by way of Rule B9 should, *a fortiori,* demonstrate the required interest.

But the majority states that once a litigant, through Rule B9, becomes a party at the circuit court, Md.Cts. & Jud. Proc.Ann. § 12–301 gives that party an appeal to this Court. I do not read § 12–301 as giving an absolute right of appeal to every party that has suffered a final judgment in the circuit court. All appeals must be from final judgments, but not all final judgments are appealable. For instance, Md.Rule 1035(b)(1) and Md.Code Ann. art. 2B, § 175(f) preclude us from reviewing the circuit court's final judgment in a liquor board case where no subject matter jurisdiction exists. Also, § 12–302 states that "unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment entered or made in the exercise of appellate jurisdiction in reviewing the decision of ... an administrative agency...." In addition, these sections must be construed in the light of judicial gloss limiting appeals. *Cf. Webster v. Larmore,* 270 Md. 351, 311 A.2d 405 (1973) (although § 12–501, controlling appeals from the orphans court, seems to speak in abso-

lutes, it must be construed in the light of the restrictive gloss imposed by decision of the Court of Special Appeals).

I believe, as the Court of Appeals stated in *Brashears*, that the clear intent of the legislature is to restrict appeals in liquor board cases at every stage. That, in my opinion, means a progressive limitation on the right to appeal. Standing at the board level is broad. Standing to appeal to the circuit court is restricted to license applicants or ten or more residents or property owners. Appeals to this Court are further restricted by subject matter, but *Jabine* opens an appeal to parties failing to satisfy the numerical requirement of § 175(b)(1) but who nevertheless demonstrate, on the record, a sufficient interest in the matter.

I conclude that the appellate court must, on the basis of the record, determine whether appellant has an interest in the matter sufficient to give standing. Here, appellant Pickett has not, in my view, demonstrated that interest.